UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

LHI LIQUIDATION CO., INC., *et al.*,

Debtors.

NOT FOR PUBLICATION

Case No. 13-14050 (MG)

(Jointly Administered)

**MEMORANDUM OPINION AND ORDER DENYING MOTION OF GRISTEDES
FOODS, INC. TO COMPEL MADISON CAPITAL HOLDINGS LLC AND
MC LONG TERM HOLDINGS LLC TO COMPLY WITH ASSUMPTION ORDER**

*A P P E A R A N C E S:*

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
*Attorneys for Gristedes Foods, Inc.*
1501 Broadway – 22nd Floor
New York, New York 10036
By:   Kevin J. Nash, Esq.

DUANE MORRIS LLP
*Attorneys for Ansonia Commercial LLC*
1540 Broadway
New York, New York 10036
By:   Lawrence J. Kotler, Esq.

COLE SCHOTZ P.C.
*Attorneys for Madison Capital Holdings LLC*
      *and MC Long Term Holdings LLC*
1325 Avenue of the Americas, 19th floor
New York, New York 10019
By:   Leo V. Leyva, Esq.
      Ilana Volkov, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion (the "Motion," ECF Doc. # 1032) of Gristedes

Foods, Inc. ("Gristedes") to compel Madison Capital Holdings LLC ("Madison Capital") and

MC Long Term Holdings LLC ("MC Long Term," together with Madison Capital, the

"Madisons") to comply with their purported adequate assurance obligations required by the

1

Court's order (the "Assumption Order," ECF Doc. # 636) authorizing the assumption and assignment of the Gristedes Sub-Sublease (defined below). By the Motion, Gristedes seeks to compel payment by Madison Capital and MC Long Term on pain of contempt.

Asonia Commercial LLC ("Asonia") filed a limited response (the "Asonia Response," ECF Doc. # 1038) and Madison Capital and MC Holdings filed a memorandum of law in opposition (the "Madison Objection," ECF Doc. # 1042).[1] Gristedes filed a reply (the "Reply," ECF Doc. # 1050).

For the reasons stated below, the Motion is **DENIED**.

## I.    BACKGROUND

### A.    General Background

Loehmann's Holding, Inc., *et al.* (the "Debtors") filed for chapter 11 protection on December 15, 2013 (the "Petition Date"). This dispute relates to the assumption and assignment of the Gristedes' sub-sublease (the "Sub-Sublease") for the premises at 2101-2115 Broadway, New York (the "Broadway Premises"). The Broadway Premises are subject to a series of integrated lease and sublease agreements originating from a prime lease, as amended, originally made by and between the predecessor to Asonia, as landlord, and The Great Atlantic & Pacific Tea Company ("A&P"), as tenant, dated June 25, 1997 (the "Prime Lease"). (Mot. ¶ 10.) In October 2002, Gristedes entered into a sublease with A&P and operated at the Broadway Premises for three years. (*Id.* ¶ 11.) In October 26, 2005, Gristedes entered into the Sub-Sublease with Loehmann's Operating Co., pursuant to which Loehmann's operated at the Broadway Premises through the date of its bankruptcy. (*Id.* ¶ 12.) In connection with A&P's first bankruptcy, the Prime Lease was rejected in favor of a tri-party agreement whereby

---

[1]    The Madison Objection is supported by the declaration of Leo V. Leyva (the "Leyva Declaration," ECF Doc. # 1043).

2

Gristedes became the direct tenant of Ansonia and Loehmann's became Gristedes' sub-tenant. (*Id.* ¶ 13.) After Loehmann's filed for bankruptcy, it packaged its store leases for sale pursuant to a designation agreement (the "Designation Rights Agreement") with Madison Capital in which Madison Capital bought the right to designate on Loehmann's behalf various stores for either assumption or rejection in bankruptcy. (*Id.* ¶ 14.)

On January 23, 2014, the Court entered an order approving Madison Capital's purchase of lease "designation rights" from the Debtors for the sum of $6,350,000 pursuant to the Designation Rights Agreement. (ECF Doc. # 301.) In accordance with the Designation Rights Agreement, Madison Capital directed the Debtors to provide notice of the assumption of the Sub-Sublease and assignment to a limited liability company, MC Long Term.[2] (Madison Obj. at 5.) Accordingly, the Debtors filed the *Notice of Debtors' Intent to Assume and Assign Unexpired Real Property Lease* (the "Notice of Assignment," ECF Doc. # 449). The Notice of Assignment identified MC Long Term as the intended assignee and provided information regarding MC Long Term's adequate assurance of future performance. (*Id.* Ex. C.)

After the Debtors filed the Notice of Assignment, Gristedes filed a reservation of rights (the "First Reservation of Rights," ECF Doc. # 468). In addition to reserving its rights, Gristedes stated that MC Long Term's agreement to establish a one month security deposit satisfied its adequate assurance issue:

> Gristedes also reserves its rights regarding the adequate assurance of future performance. As this pleading was prepared, Gristedes obtained MC Long Term Holding's agreement to establish a one month security deposit with Gristedes to satisfy the adequate assurance issue. This is acceptable to Gristedes.

---

[2] MC Long Term is a limited liability company that is owned and managed by the principals of Madison Capital.

(First Reservation of Rights at 2.)  About two months later, Gristedes filed another reservation of rights in response to the Notice of Assignment, but it only addressed Gristedes' concerns with respect to the anticipated interplay between Gristedes and Asonia under the Sublease and makes no mention of MC Long Term or Madison Capital.  (ECF Doc. # 565.)

With Grsitedes' consent, the Court entered an order approving the assumption and assignment of the Sub-Sublease and related agreements to MC Long Term (the "Assumption Order," ECF Doc. # 636).  With respect to adequate assurance, the Assumption Order states:

> The Debtors and [MC Long Term] have provided both [Gristedes] and [Ansonia] with adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1), 365(b)(3) and 365(f)(2)(b); provided, however, that the Assignee, as additional adequate assurance, shall provide [Gristedes] and with an additional security deposit equivalent to one (1) month's rent.

(Assumption Order ¶ 3 (underline in original).)  Upon assignment of the Sub-Sublease (which closed on July 1, 2014), Asonia and Gristedes were paid $96,414 to cure the Debtors' defaults under the Sub-Sublease (and the over-lease) in accordance with the terms of the Assumption Order, and MC Long Term became the new tenant under the Sub-Sublease.  (Madison Obj. at 7 (citing Leyva Decl. ¶ 13).)  The one month of additional rent of $170,257.08 as a security deposit remains unpaid.  (Mot. ¶ 3.)

  **B.**  **Prior Litigation**

On March 6, 2015, Ansonia commenced a non-payment action in the Civil Court of the City of New York against Gristedes and Madison Capital.  (Madison Obj. at 7; Leyva Decl. ¶ 15.)  In its answer, Madison Capital asserted numerous affirmative defenses, including that it was not a party to the subject leases.  (Madison Obj. at 7.)  Gristedes' answer asserted cross-claims against Madison Capital seeking to recover possession of the premises as well as damages, including the unpaid additional security deposit.  (*Id.*)  After Madison Capital moved

4

to dismiss Gristedes' cross-claims, Gristedes agreed to dismissal through a stipulation dated May 6, 2015. (*Id.*)

On May 22, 2015, Gristedes commenced a separate lawsuit in the Supreme Court of New York County (the "Supreme Court Litigation") against both Madison Capital and MC Long Term. (*Id.* at 8.) Gristedes sought an award of damages against MC Long Term for non-payment of rent and for the unpaid additional security deposit; Gristedes also sought a determination that Madison Capital is jointly and severally liable for such damages based on a corporate veil piercing claim. (*Id.*) On June 1, 2015, Gristedes filed another non-payment petition in the Civil Court of the City of New York against MC Long Term "c/o Madison Capital Holdings LLC," seeking possession of the premises and a money judgment for the non-payment of rent and the additional security deposit (the "Civil Court Litigation"). (*Id.*) In response to the Civil Court Litigation, MC Long Term relinquished possession of the premises to Gristedes and consented to the entry of judgment in favor of Gristedes in the amount of $2,468,458.25, representing all unpaid rent and taxes due under the Sub-Sublease through September 2016 (the "Stipulation of Settlement"). (*Id.*) In exchange for MC Long Term consenting to entry of the judgment, Gristedes dismissed all claims against MC Long Term, including those asserted in the Supreme Court Litigation.[3] (*Id.*)

## C. Gristedes' Arguments

Gristedes argues that both Madison Capital and MC Long Term should be compelled to comply with the Assumption Order's requirement to provide adequate assurance of future performance. (Mot. ¶ 26.) Gristedes contends that the adequate performance requirement covers *both* Madison Capital and MC Long Term. (*Id.*) Gristedes argues that after inducing Gristedes'

---

[3] Gristedes continues to pursue several causes of action against Madison Capital in the Supreme Court Litigation, including claims for piercing the corporate veil and alter ego liability. Madison Capital moved to dismiss these claims; the motion to dismiss remains pending.

5

consent based on Madison Capital's strong financial standing after directing parties to its website, Madison Capital cannot now divorce itself from ensuing defaults and "hide behind a shell entity." (*Id.*) Gristedes further contends that Madison Capital injected its own financial strength into the analysis by coupling the concept of MC Long Term's adequate assurance with its own operating performance and such was a knowing and calculated decision that constituted an implied, if not express, representation that MC Long Term would be a long term tenant and adequately capitalized. (*Id.* ¶ 28.)

Gristedes contends that the failure of Madison Capital to meet its adequate assurance commitment to Gristedes should be punishable by contempt unless Madison Capital honors the letter and spirit of the Assumption Order by the payment of the security deposit and Madison Capital's additional capitalization of MC Long Term. (*Id.* ¶ 31.)

### D.    Asonia's Arguments

In its limited response, Ansonia argues that Gristedes has failed and refused to honor its obligations under its sublease resulting in a state action by Ansonia against Gristedes on March 6, 2015, which, contrary to Gristedes' representations in the Motion, remains ongoing. (Ansonia Response ¶ 6.) Moreover, neither Gristedes nor MC Long Term has paid the rent or real estate taxes as required by the Sub-Sublease. (*Id.* ¶ 7.) Ansonia asserts that the arrears under the Sub-Sublease exceed $1.4 million. (*Id.*)

Ansonia contends that, to extent that the Court directs either Madison Capital or MC Long Term to pay the additional security deposit of $170,257.08, the Court should direct the payment to Ansonia, as the over-landlord, and not to Gristedes. (*Id.* ¶ 8.)

### E.    Madison Capital and MC Long Term Holding's Arguments

In response, the Madisons contend that (i) the Motion is procedurally defective and lacks merit, (ii) Gristedes' conduct and acceptance of benefits from the Madisons foreclose its rights to pursue the additional security deposit and (iii) Gristedes' intentional decision not to seek additional adequate assurance protection in the Assumption Order bars a claim against Madison Capital for the payment of the additional security deposit.  (*See generally* Madison Obj.)

First, the Madisons argue that the Motion effectively seeks to have the Court determine that Madison Capital is liable for MC Long Term's obligation to pay the additional security deposit referenced in the Assumption Order and require further capitalization of MC Long Term. (*Id.* at 10.)  In doing so, the Madisons contend that Gristedes is asserting a claim for monetary relief against a party with no factual or legal responsibility.  (*Id.*)  The Madisons further contend that even if the Court had the ability to hear this dispute between two non-debtor parties (which the Madisons contend the Court does not), the proper procedural tool for seeking this type of relief is an adversary proceeding.  (*Id.* at 11.)  Additionally, the Madisons contend that Gristedes has failed to meet the requirements for piercing the corporate veil.  (*Id.*)

Second, the Madisons contend that Gristedes is equitably estopped from asserting a claim against Madison Capital for payment of the additional security deposit based on Gristedes' statement in its First Reservation of Rights in which it stated that it was "acceptable" that only MC Long Term would be responsible to establish the additional one month security deposit.  (*Id.* at 14.)

Third, the Madisons argue that Gristedes' intentional decision not to pursue additional adequate protection in the Assumption Order bars any claim against Madison Capital.  (*Id.* at

7

16.) The Madisons argue that Gristedes could have demanded, for example, a corporate guarantee, a letter of credit, or a larger security deposit. (*Id.*)

## II. DISCUSSION

The genesis of this dispute is the Assumption Order entered by this Court, *with Gristedes consent*, approving the assumption of the Sub-Lease and assignment to MC Long Term. (Assumption Order at 2 ("the Sub-Sublandlord and the Landlord having agreed to the entry of this Order . . . .").) Nothing in the Assumption Order imposed any obligation on Madison Capital to pay any amounts due from MC Long Term.[4] Contrary to Gristedes' argument, the Court is not required to "interpret" the confirmed chapter 11 plan or the Assumption Order.

Gristedes expressly agreed to the establishment of one month's rent as security deposit by MC Long Term (not Madison Capital) in its First Reservation of Rights:

> Gristedes also reserves its rights regarding the adequate assurance of future performance. As this pleading was prepared, Gristedes obtained MC Long Term Holding's agreement to establish a one month security deposit with Gristedes to satisfy the adequate assurance issue. **This is acceptable to Gristedes**.

(First Reservation of Rights at 2 (emphasis added).)

The agreement requiring a security deposit by MC Long Term contradicts Gristedes' argument that it relied on the financial strength of Madison Capital when consenting to the assumption and assignment of the Sub-Sublease. The Assumption Order does not even mention Madison Capital. If Gristedes believed that Madison Capital held itself out as potentially liable for MC Long Term's obligations, it should have insisted that the Assumption Order reflect such

---

[4] Gristedes argues that Madison Capital should be compelled to meet the adequate assurance obligations of MC Long Term, and upon failing to do so, Madison Capital should be held in contempt. Contempt would not be an available remedy even if this Court had jurisdiction, which it concludes it does not. Contempt may only be ordered based on clear and convincing evidence of a violation of a clear and unambiguous order. The Assumption Order is not a clear and unambiguous order imposing a payment obligation on Madison Capital. *See City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n*, 170 F.3d 279, 282–83 (2d Cir. 1999) ("A party may be held in contempt only if it is proven by 'clear and convincing' evidence that the party violated a 'clear and unambiguous' order of the court." (citations omitted)).

8

a requirement. Additionally, MC Long Term was described throughout the proceedings as a limited liability company "owned and operated by the principals of Madison Capital"; this does not support Gristedes' argument that Madison Capital would be responsible for the obligations of MC Long Term. Gristedes fails to provide any authority that a corporate parent incurs liability for the adequate assurance obligations of a wholly owned subsidiary or affiliate absent a contractual provision or order imposing such a requirement.

When MC Long Term failed to perform as required by the terms of the Assumption Order, Gristedes filed several lawsuits in state court against Madison Capital and MC Long Term. Indeed, Gristedes has already recovered a $2,468,458.25 judgment against MC Long Term. Unable to recover damages based on its judgment against MC Long Term, Gristedes is also pursuing claims in state court to recover its judgment against Madison Capital based on piercing the corporate veil and alter ego. Civil contempt of MC Long Term—apparently a judgment proof defendant—is not an available remedy.[5] The dispute against Madison Capital is a matter properly resolved by the state court.

Gristedes' counsel acknowledged during the hearing on the Motion that this post-confirmation dispute between Gristedes and Madison Capital—two non-debtor parties—can have no conceivable effect on the Debtors. Therefore, the Court concludes that it does not have subject matter jurisdiction over this dispute. *See generally Park Ave. Radiologists, P.C. v. Melnick (In re Park Ave. Radiologists, P.C.)*, 450 B.R. 461, 467–69 (Bankr. S.D.N.Y. 2011).

---

[5]    Civil contempt is appropriate only when "obedience is within the power of the party being coerced by the order." *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 935 (2d Cir. 1992). *See also Shillitani v. United States*, 384 U.S. 364, 370-71 (1966) (concluding that the justification for civil contempt depends upon the ability of the contemnor to comply with the court's order); *Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986) (stating that because compliance with a court's directive is the goal, an order of civil contempt is appropriate "only when it appears that obedience is within the power of the party being coerced by the order") (citation omitted); *In re Marc Rich & Co., A.G.*, 736 F.2d 864, 866 (2d Cir. 1984) (concluding that civil contempt is a coercive sanction, and thus a person held in civil contempt must be able to comply with the court order at issue).

9

Even if such jurisdiction did exist, the Court believes that abstention pursuant to 28 U.S.C. § 1334(c)(1) is appropriate under the circumstances.  This is a post-confirmation dispute that arises between two non-debtor parties and, as such, it would have no material effect on the administration of the estates.

### III.    CONCLUSION

For the forgoing reasons, the Motion is **DENIED.**

**IT IS SO ORDERED.**

Dated:    March 30, 2016
         New York, New York

                                            ___*Martin Glenn*_____
                                               MARTIN GLENN
                                          United States Bankruptcy Judge